<span style="color:red">EXHIBIT B</span>                                                1

1              **UNITED STATES DISTRICT COURT**

2              **CENTRAL DISTRICT OF CALIFORNIA**

3                    **WESTERN DIVISION**

4      **THE HON. JUDGE GARY ALLEN FEESS, JUDGE PRESIDING**

5

6   UNITED STATES OF AMERICA,            )
                                         )
7                    Plaintiff,          )
                                         )
8          vs.                           )  NO. 08-CR-58-GAF
                                         )
9   TRACII LYNNE SHOW VICIAN,            )
                                         )
10                   Defendant.          )
    _____)

11

12

13

14         **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

15              Los Angeles, California

16              Monday, June 22, 2009

17

18

19

20

21

22

23     **LISA M. GONZALEZ, CSR 5920 – Official Reporter**
                   **Roybal Federal Building**
24        **255 East Temple Street, Room 181–C**
                 **Los Angeles, CA  90012**
25          **(213) 621–7709; csrlisag@aol.com**

**APPEARANCES:**

FOR THE GOVERNMENT:    THOMAS P. O'BRIEN
                       UNITED STATES ATTORNEY
                       BY:  JEFF MITCHELL
                       ASSISTANT UNITED STATES ATTORNEY
                       United States Courthouse
                       312 N. Spring Street
                       Los Angeles, California 90012
                       (213) 894-0698

FOR THE DEFENDANT:     DOMINIC CANTALUPO, ESQ.
                       233 Wilshire Boulevard
                       4th Floor
                       Santa Monica, California  90401
                       (310) 388-6016

 1          *Los Angeles, California, Monday, June 22, 2009*

 2                          *2:00 p.m.*

 3                          *-o0o-*

 4          THE CLERK:  Calling matter number six, United

 5  States of America versus Tracii Lynne Show Vician.

 6          Counsel, please state your appearances.

 7          MR. MITCHELL:  Good afternoon, Your Honor.

 8  Jeff Mitchell on behalf of the United States.

 9          THE COURT:  Good afternoon.

10          MR. CANTALUPO:  Good afternoon.  Dominic Cantalupo

11  appearing with Tracii Vician, who is present and in custody.

12          THE COURT:  All right.  This matter is on for

13  sentencing today.

14          Was there timely disclosure of the presentence

15  report?

16          MR. CANTALUPO:  Yes, Your Honor.

17          THE COURT:  And has Ms. Vician had an opportunity

18  to review that report and discuss its contents with you?

19          MR. CANTALUPO:  Yes.

20          THE COURT:  In connection with the preparation for

21  this hearing, I have read and considered the recommendation

22  letter and revised recommendation letter of the Probation

23  Department, the short addendum to the presentence report,

24  the presentence report itself, the government's sentencing

25  position, the defendant's sentencing position and

```
 1   supplemental to defendant's sentencing position; and just

 2   today from the government I managed to pull off the docket

 3   materials that were filed on late Thursday.

 4            Mr. Mitchell, what do I have to do to get

 5   Assistant United States Attorneys to give me sentencing

 6   materials more than a business day or two before the

 7   sentencing?

 8            MR. MITCHELL:  Yes, Your Honor.  I apologize for

 9   the late filing.  There is -- part of our process is that a

10   courtesy copy is always filed.  I followed up the following

11   day on Friday, and I left a message indicating that I had

12   filed something the day before.

13            THE COURT:  Well, I know that notice is better

14   than no notice, but it really doesn't give adequate time to

15   deal with materials, especially when they're as voluminous

16   as you have produced.  So to the extent that I have missed

17   something, that consequence falls on the government.

18            Mr. Cantalupo, are you aware of anything that I

19   should have read and considered for this sentencing that I

20   haven't mentioned?

21            MR. CANTALUPO:  No, Your Honor.

22            THE COURT:  Mr. Mitchell, anything that you know

23   of that I should have read and considered that I haven't

24   mentioned?

25            MR. MITCHELL:  No, Your Honor.
```

1          THE COURT:  All right.  This is a sentencing

2     proceeding.  Ms. Vician was convicted via guilty plea of

3     wire fraud, aggravated identity theft, and tax evasion.

4     It's a fairly complicated situation, but essentially posing

5     as a vice president of NBC Universal, she negotiated a

6     contract with a staffing agency whereby the agency would

7     provide services to NBC through two named people.

8          The two named people turned out to be her and her

9     husband.  And posing as the NBC negotiator she made these

10    arrangements, signed a contract in his name, and managed to

11    get -- I believe the figure for Tech Systems was $220,000 or

12    thereabouts in the form of cash that ended up in her hands

13    through this scheme.

14          There were two other agencies, staffing agencies,

15    TAC, that's T-A-C, and Consys, who also suffered losses.

16    The revised letter that I received had a revised computation

17    with respect to -- with respect to the restitution.

18    Initially it was thought that it was five-hundred and

19    forty-some thousand dollars.  The revised amount is

20    484,439.79 in the revised letter.

21          There are also tax counts because of Ms. Vician's

22    failure to report income and a tax loss to the government of

23    $87,891.

24          Ms. Vician pled to a three-count information

25    charging the counts that I've previously identified.  The

1  parties reached agreement regarding Sentencing Guideline

2  factors.

3  　　　　The Guideline computation by the Probation Office

4  was essentially the same in terms of the factors.  Count 1

5  is a base of plus seven, with plus 14 upward adjustment for

6  loss, to an adjusted level of 21.

7  　　　　Count three was a base of 16 based on the tax loss

8  plus two points for the failure to report source of income

9  exceeding $10,000 for criminal activities, and an adjusted

10  level 18.  Multi-count adjustment was applied.  One unit was

11  added for each one of the convictions in counts one and

12  three for a total of two.  That two was added to the higher

13  adjusted offense level.  So 21 plus two is 23, less three

14  points for acceptance.  Final offense level of 20.

15  　　　　The Criminal History Category was initially

16  computed at VI.  And let's start with that because that was

17  the source of an objection.  My tentative view is that based

18  upon the additional information regarding the arrests, that

19  Mr. Cantalupo is right generally, although -- there is an

20  additional three points that he would take off.  He says it

21  should be four; the government says it should be seven.

22  　　　　I think the government is correct given the

23  sequencing of the arrest so that there should have been two,

24  three points, plus the one point for the initial

25  misdemeanor, so a total of seven criminal history points.

1  And both parties agree that the traffic offense should not

2  be counted and that therefore then eliminates the two points

3  for the conviction or the commission of this crime while on

4  probation under criminal justice sentence.

5          So my view is it's a Criminal History Category IV

6  with a range of 51 to 63 months.  I think your view,

7  Mr. Cantalupo, was Category III, 41 to 51 months; and both

8  parties agree that the original Category VI is not

9  applicable.

10          Mr. Cantalupo, do you want to be heard on that?

11          MR. CANTALUPO:  Your Honor, with respect to the

12  criminal history, given the government identified the dates

13  of arrest, we would submit.

14          THE COURT:  All right.  Then, let me ask you to

15  generally address because that was the very specific

16  objection.  You argue essentially the 3553 factors and what

17  you contended to be a reasonable sentence in the case.  Tell

18  me what your position is now, and you can make any argument

19  you want at this point.

20          MR. CANTALUPO:  Thank you, Your Honor.  Your

21  Honor, there is no question in this case that Ms. Vician

22  needs to be punished.  That's clear, not only from her

23  conduct in this case, but as Your Honor knows, there are

24  some priors that are somewhat similar to the instant

25  offense.

1    The government has throughout these proceedings

2  taken a very hard view of Ms. Vician.  Originally this case

3  started with just a passport fraud indictment.  It ended up

4  superseding a couple of times until we get the charges to

5  which Ms. Vician pled.  But I would like to point out to the

6  Court that with regard to the tax evasion count, that was

7  Ms. Vician who asked the government to initiate that

8  investigation.  It was her attempt to resolve all issues

9  that she would have with the government, and the government

10  complied.

11    Your Honor had granted a few continuances to allow

12  us to work out the plea agreement, and that was ultimately

13  worked out.  So I would ask Your Honor to understand that

14  Ms. Vician at this point in her life, regardless of whatever

15  else may have happened in the past, does understand what she

16  did was wrong, does understand that she needs to be punished

17  for this.

18    And she submitted a letter to Your Honor in

19  connection with today's proceedings in which she tried to

20  explain to Your Honor just that, that she realizes what she

21  has done, the harm she has done to her family, and the

22  separation that she has caused herself from her children.

23  All those things should be considered under 3553(a).

24    THE COURT:  I don't disagree with that, but you

25  need to help me out a little bit here, because you say she

1  has come to the realization.  At what point in time are you

2  saying that she came to that realization?  Because while

3  this case was pending, it appears to me that she wasn't

4  aware at that point, even though she had already been

5  charged in this case and was dealing with the government,

6  given the history of her conduct while she was on bond.  Not

7  the sort of thing that gives me a lot of confidence that, as

8  you say now, now she realizes.  But when is now?  As of

9  when?

10           MR. CANTALUPO:  Well, Your Honor, Ms. Vician quite

11  honestly, I think, addressed almost that question in her

12  letter.  If I remember her letter correctly, she

13  acknowledged her violation of her bond and indicated that

14  when she was first brought to MDC on that revocation of her

15  bond, she continued to deny and say to herself she wasn't

16  supposed to be there; she didn't belong there.

17           But shortly after coming to the MDC and searching

18  out some programs and some offerings that MDC had, it is at

19  that point that I think that Ms. Vician truly understood the

20  magnitude and the gravity and the error of her way.

21           And certainly that comes later in these

22  proceedings than probably any of us would have liked, but

23  it's an honest representation from Ms. Vician of how she

24  felt when she was being violated and what -- her changes in

25  her feelings after she entered the MDC.

1    In the psychological report that was prepared

2    after an evaluation, there's a discussion of a couple of

3    programs Ms. Vician participated in.  Breaking Barriers is

4    one of them.  It seems to be an important program for

5    Ms. Vician.  It is probably one of the most important things

6    that she has ever participated in because it truly appears

7    to have changed her perspective of her conduct throughout

8    her life, and I'm talking about some prior convictions.

9    She is very understanding that she should be

10    punished in this case.  She is willing to and wanting to

11    confront whatever psychological issues exist that she needs

12    to in order to amend her ways and not have the sort of

13    response reaction to whatever crisis developed in her life

14    and with her family to not respond in a way that's going to

15    be detrimental to herself and her family to commit other

16    crimes.

17    That is -- that is very important.  And while

18    again it comes a little bit later in the process than any of

19    us would have liked, I do think it's genuine.  And again she

20    makes reference to that in her letter to the Court.

21    There is also the issue of her family.  As Your

22    Honor knows, her husband was charged and convicted in

23    connection with this case.  Luckily he remains free to take

24    care of the children, but he was not always -- or he was not

25    the primary caregiver.  It was Ms. Vician who provided for

1    the support and care of their children throughout their

2    lives.

3           The daughter is 14, and the son is 11, and they're

4    both having a difficult time.  Both the PSR and the

5    psychological report refer to the difficulty that both

6    children are having in adjusting to having their mother in

7    custody.  In the psychological report, the expert recommends

8    a couple of conditions that perhaps the Court might want to

9    consider.

10          The psychologist seems to think that it would be

11   very beneficial for Ms. Vician to participate in some sort

12   of community service where she assists in either battered

13   women or women in her position that are convicted felons.

14   And having discussed that with Ms. Vician, she is very

15   interested and very desirous of that kind of opportunity to

16   help continue further her desire to change --

17          THE COURT:  It doesn't have to be a term of

18   supervision.  She can --

19          MR. CANTALUPO:  Of course.

20          THE COURT:  -- there would be no bar from her

21   doing that.

22          MR. CANTALUPO:  No.  Of course not, Your Honor.

23   Of course not.  It's just sometimes with it being a

24   condition, being that Ms. Vician is indigent, if there's

25   costs involved, that might be taken care of for her.  And

```
1   also with respect to conditions -- and again considering

2   costs -- a therapist would be very beneficial for Ms. Vician

3   to see, when she's on supervised release, to help continue

4   in her path of righting her psychological problems.

5           And also with respect to punishment, as the Court

6   fully knows, post Booker Your Honor has discretion to do

7   almost anything, and one of the things that might be

8   appropriate in this case is some sort of combination of

9   imprisonment, community confinement.

10          There is a large restitution order that this Court

11  will impose, and Ms. Vician needs to pay that.  Having her

12  incarcerated for five or six or seven years just delays the

13  amount of time before she can get out there, get back

14  working, and start paying restitution.

15          Also, having some sort of split custodial sentence

16  in maybe a community confinement portion not only allows her

17  to get out to work but will allow her to participate in her

18  children's lives again which she has now been totally

19  excluded from because of her custody.  That's another thing

20  we ask the Court to consider is splitting the sentence in

21  some manner.

22          Now, the starting range, as the Court indicated,

23  would be a low end of 51 months.  I believe that was

24  correct.

25          THE COURT:  51 to 63, yeah.
```

```
 1              MR. CANTALUPO:  51 to 63.

 2              THE COURT:  Plus 24 for the aggravated identity

 3    theft.

 4              MR. CANTALUPO:  At the low end that would be 75

 5    months.  And, Your Honor, we would submit that that is more

 6    than necessary to protect the public, to instill deterrence

 7    in Ms. Vician, and prevent recidivism.  Certainly, Your

 8    Honor, a term of four years, including the consecutive 24,

 9    would have the same effect on Ms. Vician as the term of 75

10    months.

11              It's not a question of changing Ms. Vician's

12    attitude.  I think it's a question of providing Ms. Vician

13    with some of the rehabilitative opportunities that exist

14    within the Bureau of Prisons to give her the launching pad

15    to get out of prison and to be a law-abiding citizen and to

16    remain that way.

17              THE COURT:  Four years is what she got in December

18    of '96; right?

19              MR. CANTALUPO:  Yes, but she only served 18 months

20    in that sentence.

21              THE COURT:  I well know that she didn't serve very

22    much of it.

23              MR. CANTALUPO:  Yes.  And here in the federal

24    system, Your Honor, she will serve whatever term the Court

25    imposes.  But for whatever good time credits she'll be
```

1    allowed, the time she'll be serving in this case is more

2    than any other time she has spent in custody, is more time

3    away than she's ever been from her children.

4          If the Court has some specific questions, I can

5    certainly do my best to answer them.

6          THE COURT:  No, I don't.  I've read the materials,

7    so I have a fairly good idea about her background, her

8    history, and so forth.

9          Let me hear from the government, and then I'll

10   hear -- and then if there's anything you want to say in

11   response, Mr. Cantalupo, you can speak.  And then if your

12   client wants to speak, she can speak as well.

13         MR. CANTALUPO:  Yes.  Thank you.

14         THE COURT:  Mr. Mitchell.

15         MR. MITCHELL:  Yes, thank you, Your Honor.  I will

16   try to be brief, as I've already written extensively on this

17   sentencing issue.  The biggest concern from the government

18   is the continued lack of respect for the law.  The defendant

19   has repeatedly lied to law enforcement, the Los Angeles

20   Sheriff's Department, the State Department agents, Pretrial

21   Services.  She has a history of parole and probation

22   revocations, and now there's a pattern of committing new

23   crimes while being on release.

24         It started off in 1994 when she was on release for

25   her theft offenses.  The probation officer in that case took

1   leniency on her and recommended probation even though that

2   wasn't the defendant's first offense, and the defendant

3   failed to show up for sentencing.

4           And before they could apprehend her, she committed

5   a new crime.  And we're in the same position.  The probation

6   officer again recommended leniency, and while she's out on

7   release, she's committed new crimes.

8           And now the defendant in her letter from last

9   month has attempted to mislead the Court when she said that

10  her current fraud crimes were motivated, caused by her dire

11  financial straits in that she was about to be laid off.

12          Your Honor, the evidence in this case shows that

13  she had already begun implementing that fraud scheme only

14  four months after she began working for TAC Worldwide.  Four

15  months after she was hired by TAC Worldwide, they were

16  already in possession of fraudulent documents for the

17  fictitious employees, and the defendant continued to work

18  there under her lawful position as vice president earning

19  her hundred-thousand-dollar salary for almost another year

20  at the same time as earning all these fraudulent proceeds.

21  And over the course of the next 18 months, she earned and

22  spent half a million dollars.

23          So this isn't a case, as the defendant claims,

24  that she was just trying to put a roof over her family's

25  head.  She spent half a million dollars in 18 months.  And

1   the descriptions in the government's position paper of how

2   she spent that half a million dollars is not on basic needs

3   for her family.  This is a case of she stole a half million

4   dollars; she spent it.

5          THE COURT:  Do you know anything about this --

6   there's an allegation and it's in the defendant's position

7   where now there's a claim that -- it says she's billed close

8   to $1 million to one Japanese firm that is withholding

9   payment.  Do you know anything about that?

10         MR. MITCHELL:  No, Your Honor.  I don't.

11         THE COURT:  I'll ask Mr. Cantalupo if he can

12  clarify that momentarily.  Let me finish with Mr. Mitchell

13  first.

14         MR. MITCHELL:  As for the psychological report, I

15  think the weight that the Court should give to that is

16  depending on the truthfulness of the defendant, because it

17  wasn't corroborated.  And the defendant -- besides the fact

18  that defendant has committed ten offenses involving lying

19  and deceit -- she's lied to the sheriff's department, the

20  State Department, Pretrial Services.  Now she's attempted to

21  mislead this Court.  So the government believes that the

22  weight for that report should be very minimal, if any.

23         It's because of all of these reasons that the

24  government is asking for a Guideline Sentence.  51 months

25  for counts 1 and 3, and 24 consecutive for count 2, for a

 1  total of 75.  And, Your Honor, anything less than 75 months

 2  in prison would not deter this defendant.  As this Court

 3  noted, she had -- she was recently sentenced -- in '96 she

 4  was sentenced to 40 months' imprisonment.  But after being

 5  released from that term of imprisonment, she's gone on to

 6  commit nine new crimes.  So that 40-month imprisonment did

 7  not deter her, and anything less than 75 will not deter her

 8  again.  Thank you, Your Honor.

 9          THE COURT:  Mr. Cantalupo.

10          MR. CANTALUPO:  First, with respect to the

11  government's allegation that this defendant has been lying

12  to this Court, lying to Pretrial Services.  I submit there's

13  no evidence to that.  This is the government surmising and

14  trying to pull inferences from something where there are no

15  inferences.

16          Ms. Vician was honest in her statements to

17  Pretrial, to Probation, and to this Court in a letter she

18  submitted.  If some of those statements are contradictory to

19  statements in the past, it's -- it is my belief that this is

20  because we now have a person who is viewing herself and

21  viewing her actions from a different perspective, in a more

22  realistic perspective.

23          THE COURT:  Is it your contention, Mr. Cantalupo,

24  that the expenses that have been identified by the

25  government for which the stolen funds were used were life's

1   necessities?

2          MR. CANTALUPO:  No, that's not my contention that

3   they were life necessities.  But what happened here is an

4   individual who was in a rather lucrative profession, both

5   self-employed -- and Your Honor asked about the billings

6   that are owed to her and that are not being paid, and I'll

7   address those in a minute -- and also working for these

8   companies, and she had acquired a certain lifestyle, as she

9   tried to explain to the psychologist and in the evaluation

10  report, she believed that that type of lifestyle was

11  necessary for her to maintain in order to keep her kids

12  growing up the way she had started them to grow up.  And it

13  is now that she realizes that those expenses were not

14  necessary, that it was not necessary to live any sort of

15  lavish lifestyle; that the most important thing in life is

16  family and keeping the family together and that children are

17  resilient and children will make amends for whatever the

18  family's living conditions are.  And it is a skewed

19  perception that Ms. Vician had.

20         And again, Your Honor, the point at which that

21  skewed perception changes is when Ms. Vician was placed at

22  MDC after her bond was revoked.  That is truly a

23  life-changing event for her.  And with regard to the million

24  dollars in billing, it's true that there is a company that

25  owes her money.

```
 1              Ms. Vician tells me -- and I don't have the
 2   e-mails but, Your Honor, remember, I am the second attorney
 3   in this case.  And apparently the first attorney has e-mails
 4   explaining that this money is owed, and the reason that the
 5   company is not paying it is because they were told that
 6   Ms. Vician would be going away for a long time, and she
 7   wouldn't have to -- and she wouldn't be around to force
 8   collection.
 9              And certainly Ms. Vician intends to enforce
10   collection, and that money will go right to paying off any
11   restitution that's still owed after she's --
12              THE COURT:  Who's the Japanese company?
13              MR. CANTALUPO:  It's NTT, Nippon Telephone and
14   Telegraph.
15              THE COURT:  And who has the documentation that
16   would establish this obligation?
17              THE DEFENDANT:  My husband should have it.
18              MR. CANTALUPO:  Ms. Vician says her husband should
19   have it --
20              THE DEFENDANT:  We've offered it to Judge Feess at
21   one time --
22              MR. CANTALUPO:  Ms. Vician's husband would have
23   the paperwork.
24              THE COURT:  All right.  All right.  Mr. Cantalupo,
25   anything else you want to add?
```

```
 1              MR. CANTALUPO:  No, Your Honor.  I would submit.
 2              THE COURT:  And does Ms. Vician wish to address
 3    the Court?
 4              MR. CANTALUPO:  Yes, Your Honor.
 5              THE COURT:  All right.  Go ahead.
 6              THE DEFENDANT:  Good afternoon, Your Honor.  First
 7    of all, I just want to apologize to the Court honestly and
 8    to the government and to my victim.  My family and my
 9    children are my greatest victim because no amount of
10    incarceration or restitution is going to cover the loss, you
11    know.  There are things that I just saw on Mr. Mitchell's --
12    I don't know what it's called -- position, and he talks
13    about nine offenses, you know, including running over a
14    flare when there was a truck accident and there was a flare
15    in front of me that I didn't see.
16              Without going -- without going through everything
17    there, trying to rationalize anymore than I already have in
18    my life or justify anything, I know that his position with
19    respect to his job being to make sure that you protect
20    justice.  As a mother and as a citizen, I can appreciate
21    that.  But I think that the facts are a little skewed, and
22    all I want to do from this point forward is make my life
23    better and be a better person and a better mother.
24              And the day that you took my bond away, I was so
25    mad and I felt victimized, and I felt totally angry about
```

```
 1   it.  And six and a half months later, I can't thank you
 2   enough because I have totally -- I've discovered something
 3   here that is beyond taking responsibility for you or for him
 4   or for a three-point reduction, and that's why I took
 5   responsibility.  I'll cop to that.
 6           Back then I took responsibility for this because I
 7   wanted the three-point reduction.  I wanted to hurry it up
 8   and get it over with.  But today I take responsibility
 9   because it's liberated me as a person, and I want to get on
10   with it.  And I'm ready to take whatever -- I know there's
11   the argument that you've heard it all before, whatever.
12   It's been 10 years.  Over 10 years.  I made a huge mistake.
13   I fell back.  It's totally shameful.  I get that.  And my
14   kids are paying for it the most, and I'm sorry for that.
15           THE COURT:  All right.  Mr. Cantalupo, anything
16   else from you?
17           MR. CANTALUPO:  No, Your Honor.
18           THE COURT:  All right.  Mr. Mitchell.
19           MR. MITCHELL:  Nothing from the government, Your
20   Honor.
21           THE COURT:  All right.  Mr. Cantalupo, is there
22   any legal cause why sentence should not now be imposed?
23           MR. CANTALUPO:  No, Your Honor.
24           THE COURT:  All right.  Well, I have spent a lot
25   of time with this file, and Ms. Vician is not -- this is not
```

```
 1    her first time here.  Obviously we've had issues to deal
 2    with before, and I do recall fairly clearly the revocation
 3    proceedings in this matter and being extremely disappointed
 4    that under the circumstances of having determined that a
 5    bond was appropriate and agreeing with Judge Rosenberg, that
 6    we would find ourselves in the situation that we found
 7    ourselves in in this case with the conduct of Ms. Vician
 8    while she was on release.
 9           She's certainly correct when she says that the --
10    one of the principal victims of her criminality are her
11    children.  Unfortunately that's true all the time.  I don't
12    think that there's a Monday that goes by -- because that's
13    when we do most of our sentencing -- when there isn't at
14    least one case, if not more, where I'm confronted with the
15    fact that the person that I'm going to sentence is someone
16    who has children, and the children are going to live without
17    one of their parents for some extended period of time.
18           Unfortunately, it doesn't change the fact that
19    this is something that does occur.  This is something that's
20    common.  This is something that happens all the time, and
21    the fact that it's going to happen in this case is really
22    something that is outside of my control.
23           I have to look at the behavior and the history of
24    the defendant, all of the factors that come into play under
25    3553, as well as the Sentencing Guidelines; and there's very
```

Lisa M. Gonzalez, Official Reporter

1  little in Ms. Vician's history that gives me any confidence

2  that what she's saying today is any different than what she

3  might have said in '94 or '95 or '96 or when she violated

4  probation in '97 or parole in '99, or what she must have

5  been telling her victims in 2005 and 2006 and 2007 as she

6  was operating these schemes for one objective and one

7  objective only, and it wasn't the objective that's been

8  described.

9          It wasn't because of dire financial straits.  That

10  wasn't the reason.  It was because she wanted to live a

11  different kind of life.  And as a result of that, she put

12  her relationship with her children at risk.  She put that in

13  jeopardy, and the consequences are her responsibility and

14  not yours, Mr. Cantalupo, not Mr. Mitchell's, not the

15  government's, and not mine.

16          It was her decision, and it was a decision when we

17  look at her behavior, her criminal behavior, all of her

18  criminal behavior was extremely calculated and deceitful.

19  And it may very well be that she finally understands the

20  consequences of that, but that does not mean that the

21  consequences should not be imposed.  The only question is,

22  really, the extent of the consequences.

23          For record purposes, let me just say again that

24  for consideration of the Guidelines, I have reduced the

25  Criminal History Category to a IV, based on the total

1   computation of seven points -- and at a criminal history --

2   an offense level of 20 with that criminal history, the

3   sentencing range is 51 to 63 months under the Guidelines.

4   And then there is, of course, the 24 months.

5           Now, as you say, Mr. Cantalupo, I have a fair

6   amount of flexibility to do a number of things.  The one

7   thing I can't do, as you know, is change the 24 months.

8   That is mandatory, and that is consecutive in this case.

9           I'm going to adopt the factual findings of the

10  presentence report as the basis upon which to impose

11  sentence in this case.  I have considered the 3553 factors.

12  I have reviewed the Sentencing Guidelines as part of the

13  process of determining a reasonable sentence in this case.

14  I have read and considered the submissions of the parties,

15  including the psychological report which was submitted by

16  the defendant, and all of the government's submissions,

17  including the late submission.

18          Regarding the 3553 factors, I do note and

19  incorporate the comments of the presentence report by

20  reference as it's fully set forth on this record.  I do have

21  some additional comments in this case.  With respect to the

22  nature and circumstances of the offense, it was an offense

23  or a series of offenses that were continuous, deliberate,

24  and calculated over an extended period of time.  And as I've

25  already noted, I agree with the government that the offense

1    was not committed out of financial need but rather a desire

2    to maintain a high-end lifestyle.

3         The criminal record, her history, and

4    characteristics as I've already commented, briefly mention

5    again, a lengthy criminal record and continued criminality

6    while she was on bail in this case.  I see a need for the

7    sentence in this case to reflect the seriousness of the

8    offense, promote respect for the law, and to provide just

9    punishment for the offense.  And I don't think that making

10   some variance away from what the law would provide would

11   accomplish that objective in these circumstances given the

12   lengthy criminality and the scope of the loss that was

13   caused in light of the track record.

14        And I also think that there is a need to protect

15   the public, specific deterrence in this case.  I'm just not

16   persuaded at this point that now that she's been in jail and

17   understands what that's like, that her response to me is

18   anything other than I need to find a way to get out of here,

19   because while she was out, while she was on bond, she

20   certainly wasn't deterred at that point.  And that is of the

21   gravest concern to me in this case, that members of the

22   public are at risk if she were to be turned loose at this

23   point and put back in public.

24        So I don't have any intention of doing anything

25   remotely like that.  And I don't think a split sentence -- I

```
 1   don't think there's a way to split the sentence in this case
 2   that makes any sense or would be a legal sentence under the
 3   law, but I don't think it makes any sense in any event.  So
 4   it's my view that a sentence at the low end of the Guideline
 5   is what's appropriate in this case.
 6           I'm going to order that the defendant pay the
 7   United States a special assessment of $300, which is due and
 8   payable immediately.  I'm going to order that restitution be
 9   paid in the amount of $484,439.79.  Restitution is to be
10   paid as follows:  To TAC Systems, $139,542.78; to TAC
11   Worldwide, $147,989.07; to the Hartford Casualty Insurance
12   Company, $69,171; and to Chubb & Sons, $127,736.94.
13           Restitution is to commence during the period of
14   imprisonment of at least $25 a quarter, through the Bureau
15   of Prisons Inmate Financial Responsibility Program.  The
16   remaining unpaid amount at the time of release from custody
17   will result in the payment of nominal monthly payments of at
18   least $200, starting within 30 days after commencement of
19   supervision.  Nominal restitution payments are being ordered
20   as it does not appear to me that the defendant's economic
21   circumstances would allow for either immediate or future
22   payment of the amount ordered.
23           Partial payments are to be paid, are to be broken
24   up and paid to the victims in the proportion that their loss
25   -- that their loss is computed as a part of the whole.  The
```

```
 1   amount of restitution ordered is to be paid as set forth
 2   above.
 3            I will not order any interest on the restitution
 4   because the defendant does not have the ability to pay
 5   interest.  Payments, however, may be subject to penalties
 6   for default and delinquency under 18 USC Section 3612(g).
 7            With respect to financial obligations, the
 8   defendant is to comply with General Order 01-05.  I will not
 9   impose any fine in this case because the defendant does not
10   have the ability to pay both a fine and restitution.
11            Pursuant to the Sentencing Reform Act of 1984, it
12   is the judgment of the Court that the defendant, Tracii
13   Lynne Show Vician, is hereby committed on counts one and
14   three of the information to the custody of the Bureau of
15   Prisons, to be imprisoned for a term of 51 months.  This
16   term consists of 51 months on each of counts one and three
17   of the information, to be served concurrently, and 24 months
18   on count two to be served consecutively, for a total
19   sentence of 75 months in custody.
20            Upon release from imprisonment, the defendant is
21   placed on supervised release for a term of three years.  It
22   is three years on each of counts one and three, and one year
23   on count two, all such terms to run concurrently under the
24   following terms and conditions:
25            Number one, the defendant shall comply with the
```

1  rules and regulations of the U.S. Probation Office and

2  General Order 318.

3         Two, during the period of community supervision,

4  the defendant shall pay the special assessment and

5  restitution in accordance with this judgment's order

6  pertaining to such payment.

7         Number three, the defendant shall truthfully and

8  timely file and pay taxes owed for the years of conviction

9  and shall truthfully and timely file and pay taxes during

10 the period of community supervision.

11        Further, the defendant shall show proof to the

12 probation officer of compliance with this order.

13        Number four, the defendant shall not obtain or

14 possess any driver's license, social security number, birth

15 certificate, passport, or any other form of identification

16 in any name other than the defendant's true legal name; nor

17 shall the defendant use for any purpose or in any manner any

18 name other than her true legal name or names without the

19 prior written approval of the probation officer.

20        Number five, the defendant shall cooperate in the

21 collection of a DNA sample from the defendant.

22        And number six, the defendant shall apply moneys

23 received from income tax refunds greater than $500, lottery

24 winnings, inheritance, judgments, and any anticipated or

25 unexpected financial gains to the outstanding court-ordered

```
 1   financial obligation.
 2          The drug testing condition mandated by statute is
 3   suspended based on the Court's determination that the
 4   defendant poses a low risk of future substance abuse.
 5          Mr. Mitchell, is there a motion?
 6          MR. MITCHELL:  Yes, Your Honor.  The government
 7   moves to dismiss the underlying indictment.
 8          THE COURT:  That motion is granted.  With respect
 9   to the sentence that's been imposed, I may be wrong about
10   this, counsel, but it appears to me that the defendant has a
11   right to appeal in this case.
12          Do you agree, Mr. Mitchell?
13          MR. MITCHELL:  No, Your Honor.  I believe the
14   defendant has waived that right, as the Court has said, in
15   concurrence with her plea agreement.
16          THE COURT:  Even with the sentence that's been
17   imposed?
18          MR. MITCHELL:  Yes, Your Honor.
19          THE COURT:  Mr. Cantalupo, do you agree with that?
20          MR. CANTALUPO:  Your Honor, if I could have a
21   moment to look at the plea agreement.
22          THE COURT:  All right.
23          MR. CANTALUPO:  Yes, Your Honor.  It looks like
24   she has waived it.
25          THE COURT:  All right.  Now that leaves the motion
```

```
 1   for order authorizing application of cash bond deposited to
 2   criminal debt and which I view as being opposed by the
 3   motion to exonerate bond.
 4              MR. CANTALUPO:  Yes, Your Honor.  However, at this
 5   time we'd stipulate to have the debt applied to the
 6   restitution.
 7              THE COURT:  All right.  I'll order it applied to
 8   the restitution pursuant to 18 USC 2044.
 9              MR. CANTALUPO:  Yes.  Your Honor, in the
10   conditions of supervised release, would Your Honor consider
11   a condition in which Ms. Vician receives psychological
12   counseling as determined by probation and the defendant?
13              THE COURT:  All right.  I will add that, you know,
14   but I'm going to leave it up to the probation officer.  I'll
15   make -- I'll put it this way.  That if the probation officer
16   deems it appropriate, the defendant shall participate in a
17   program of mental health treatment in whatever form or
18   method the probation officer deems appropriate.  And I'm
19   just going to leave it at that at this point.
20              I note that the probation officer did not add that
21   to the terms, and normally if they think it's required, they
22   will put it in there.  They didn't in this case.  I have
23   some question in my own mind about this psychologist's
24   report, but I'll give the probation office some leeway and
25   we'll see if that -- see what happens with that.  But I'll
```

Lisa M. Gonzalez, Official Reporter

```
1   give them the authority to do that.

2           MR. CANTALUPO:  Thank you, Your Honor.  And can we

3   get a recommendation for a facility as close to Southern

4   California as possible?

5           THE COURT:  Well, that would be a facility in

6   Southern California; wouldn't it?  I'll make that

7   recommendation --

8           MR. CANTALUPO:  Well, as close --

9           THE COURT:  In Southern California or as close as

10  possible to Southern California.

11          MR. CANTALUPO:  Okay.  That would be great.

12          MR. MITCHELL:  Thank you, Your Honor.

13              (Thereupon, proceedings adjourned.)

14                          -oOo-

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                      CERTIFICATE

 2

 3          I hereby certify that pursuant to Section 753,

 4    Title 28, United States Code, the foregoing is a true and

 5    correct transcript of the stenographically reported

 6    proceedings held in the above-entitled matter and that the

 7    transcript format is in conformance with the regulations of

 8    the Judicial Conference of the United States.

 9

10    Date:  March 2, 2010

11

12

13                        _____

14                        LISA M. GONZALEZ, U.S. COURT REPORTER
                          CSR NO. 5920

15

16

17

18

19

20

21

22

23

24

25
```