# MOSKOWITZ COLSON
# GINSBERG SCHULMAN

Moskowitz Colson
Ginsberg & Schulman LLP

80 Broad Street, Suite 1900
New York, NY 10004

(212) 257-6455
www.mcgsllp.com

March 7, 2024

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, N.Y. 10007

  Re: *United States v. Tracii Hutsona,* 21 Cr. 299

Dear Judge Furman:

  Ms. Hutsona is serving a 51-month sentence imposed by this Court on February 28, 2023. I write pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10 to move for a sentence reduction. Under Amendment 821 to the Sentencing Guidelines, made retroactive by the Sentencing Commission, the applicable Guidelines range has changed from 41-51 months to 37-46 months. Given Ms. Hutsona's impressive post-sentencing conduct, a sentence at the bottom of the amended range is appropriate.

## A. **The Amended Guidelines**

  Part A of Amendment 821 addresses "status points," namely the additional criminal history points given to offenders for having committed an offense while under a criminal justice sentence, including probation, parole, or supervised release. The amendment limits the overall criminal history impact of status points in two ways. First, the new provision applies only to offenders with more serious criminal histories by requiring that a defendant have seven or more criminal history points under subsections (a) through (d). A defendant with six or fewer criminal history points no longer receive status points. Second, the amendment reduces from two points to one point the status points assessed for defendants to whom the provision applies.

  Regarding its reason for the amendment, the Commission explained that after several research studies, the data persuasively showed that status points add little to the overall predictive value associated with the criminal history score. U.S.S.G. App. C, Amendment 821, Reason for Amendment. It further found "that the policy reasons underlying the prospective

application of the amendment apply with equal force to individuals who are already sentenced." U.S.S.G. App. C, Amendment 825, Reason for Amendment.

To determine the extent of a retroactive sentencing reduction under § 3582(c)(2), a court must weigh the factors set forth in 18 U.S.C. § 3553(a), public safety considerations, and the defendant's post-sentencing conduct. U.S.S.G. § 1B1.10, comment 1(B). A defendant's sentence can be reduced to the bottom of the amended Guideline range. U.S.S.G. § 1B1.10(b)(2)(A).

## B. <u>Ms. Hutsona is Eligible for a Sentence Reduction</u>

When Mr. Hutsona pled guilty, the parties stipulated in the plea agreement that her total offense level was 18 and that she was in criminal history category III, resulting in an advisory guidelines range of 33-41 months. At the sentencing hearing, the Court imposed an additional two-level enhancement under 2B1.1, which increased her total offense level to 20 and increased her guidelines range to 41-51 months. The Court imposed a sentence at the top of that range. Ms. Hutsona self-surrendered to the BOP in Phoenix, Arizona to begin serving her sentence on March 20, 2023. Her current projected release date is July 2, 2026. Ex. A.

Under the new guidelines, in effect as of November 2023, Ms. Hutsona receives 3 criminal history points instead of 5, which lowers her criminal history category from category III to category II. *See* U.S.S.G. § 4A1.1(e) (amending guidelines to add 0 criminal history points if defendant has 6 or fewer points). At offense level 20 and criminal history category II, the amended guidelines range is 37-46 months.

The Probation Department correctly concludes that Ms. Hutsona is eligible for a sentence reduction. Dkt No. 75 (Jan. 12, 2024). The government has informed counsel that it will determine its position on the reduction after reviewing the instant motion.

## C. <u>The Court Should Reduce Ms. Hutsona's Sentence to 37 Months</u>

The Court should reduce Ms. Hutsona's sentence to 37 months. Her post-sentencing conduct is impressive, the 3553(a) factors weigh in her favor, and she does not present a risk to public safety.

### i. *Ms. Hustona's Post-Sentencing Conduct is Impressive*

Ms. Hutsona is serving her time at the Satellite Prison Camp in Phoenix, Arizona where she is working to rehabilitate herself and make amends. She has completed numerous educational and recreational programs at the camp, including a trauma workshop, a public speaking course, a class about victim impact awareness called "women giving back," and a drug abuse education course. Ex. A, B. Last fall, she took two college-level business courses through the continuing education program at Arizona State University. Ex. C. She also participates in Alcoholics Anonymous. Ex. A.

In addition to furthering her own education, Ms. Hutsona is assisting other inmates by working as a tutor in the Camp Education Program. She has taught three classes thus far, life skills, creative writing, and restaurant operations. Ex. A, D. Prior to her arrest, Ms. Hutsona owned and managed two successful restaurants in California and Arizona. She is now sharing her knowledge and experience with others.

Ms. Hutsona is assigned to work in the UNICOR warehouse. Ex. A. She also volunteers her time to assist at camp events. In April 2023, she helped to serve at the volunteer appreciation luncheon. *Id.* On Mother's Day weekend in May 2023, she assisted with the Children's Day program, and in November and December 2023, she led the Angel Tree effort for the entire facility. *Id.* Angel Tree is a non-profit organization that promotes gift giving for the children of incarcerated parents. Prior to her arrest, Ms. Hutsona's restaurants participated in the Angel Tree program each year, and the BOP's willingness to sponsor the program at FCI Phoenix has been quite meaningful to her.

Finally, Ms. Hutsona is doing her best to pay restitution. The BOP Federal Restitution Program requires quarterly payments of $25, but Ms. Hutsona draws from her commissary and earnings to make monthly payments of $250. Ex. A.

In short, Ms. Hutsona has taken advantage of every opportunity to show her remorse and commitment to making amends. Her amended sentence should reflect the work she is doing and the progress she has made.

    *ii.    Additional 3553(a) Factors Warrant the Full Reduction*

Two additional 3553(a) factors also warrant a reduction in sentence.

First, the conditions of confinement at FCI Phoenix are abysmal. Ms. Hutsona reports that there was no air conditioning at the facility for six weeks in May and June 2023, when the temperatures frequently rose above 100 degrees. There are leaks in the ceilings, and the tap water is brown. The inmates receive regular admonitions not to drink it. The medical care is also subpar. Ms. Hutsona states that she has been on a waitlist since March 2023 to see a medical specialist for breathing difficulties arising from her struggle with long covid. Ex. A. She further reports that because of well-documented staffing shortages inside the BOP, there is typically only one guard on duty at a camp that houses 300 women and does not have locks on the dorm room doors. *See* Colbi Edmonds, Glenn Thrush and Nicholas Bogel-Burroughs, *The Stabbing of Derek Chauvin: What We Know,* NY Times (Dec. 3, 2023) (noting that approximately 21% of federal correction officer positions were unfilled as of Sep. 2022). Needless to say, this creates a serious risk to the inmates' physical safety. Indeed, in November 2022, just several months before Ms. Hutsona arrived, an inmate at the camp obtained a gun and tried to shoot a visitor in the head. *See* Michael Balsamo and Michael R. Sisak, *Federal inmate obtained a gun at Arizona prison, attempted to shoot visitor in the head,* AP (Nov. 15, 202

Second, while the Court recommended at sentencing that Ms. Hutsona participate in the residential drug treatment program, her admission to the program was made impossible last year by the sudden influx of inmates to RDAP in Phoenix from another facility in California. *See* Dkt No. 51 (recommending participation in "the BOP residential drug abuse treatment program or any BOP drug treatment program for which she is eligible.") (Mar. 1, 2023). Had Ms. Hutsona completed RDAP, she could have earned up a 12-month reduction in her sentence. She is on the waitlist for the non-residential RDAP program, but her acceptance is not guaranteed and her completion of that program will not result in as significant a sentence reduction.

### iii.    *Ms. Hutsona Does Not Present a Risk to Public Safety*

Finally, Ms. Hutsona does not present a risk to public safety. She has been a model prisoner since the day she self-surrendered last March. She has not had any disciplinary infractions, has been deemed a minimum-security risk by the BOP, and has been granted OUT custody classification. Ex. A. An inmate with OUT custody status may be assigned to less secure housing and may be eligible for work detail outside the institution's secure perimeter with minimal staff supervision. *See Inmate Security Designation and Custody Classification,* BOP, at Chptr 2, p. 4 (Sept. 4, 2019). In September 2023, Ms. Hutsona was accepted to a BOP pilot program called GROW (Getting Ready for the Outside World). Ex. A. Inmates participating in GROW are singled out for their leadership qualities and good behavior, and they are required to lead by example and mentor others.

Ms. Hutsona had no arrests or encounters with the law while on pretrial release. As the Court will recall, she and her husband owned and operated two successful restaurants where they employed more than 100 people, and she also helped to raise her seven-year-old stepson, sharing custody with the boy's mother and offering significant financial support. Dkt No. 47 (sentencing submission) (Feb. 13, 2023). In connection with Ms. Hutsona's sentencing, more than a dozen friends, relatives and employees wrote to the Court attesting to her generosity, competence, hard work. *See id.* at Ex. A-O.

Most importantly, Ms. Hutsona knows what she did was wrong and continues to experience embarrassment and shame for her offense. "I have made excuse after excuse to justify my actions, clinging to the good I have done, and the person I know I can be," she writes. Ex. D. "There is no excuse for my actions….I have no one to blame but myself." *Id.*

Ms. Hutsona has a detailed release plan that includes residing with her family in Scottsdale, Arizona and employment at their remaining restaurant in Phoenix. Ex. D. (Unfortunately, the restaurant in California closed after Ms. Hutsona's arrest). She expects that her monthly restitution payments will significantly increase with the benefit of full-time employment.

**D.  <u>Conclusion</u>**

For the above reasons, we respectfully request that the Court resentence Ms. Hutsona to 37 months' imprisonment.

Respectfully submitted,

/s/

Deborah Colson
*Attorney for Tracii Hutsona*


cc:     AUSA Timothy Capozzi